IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


PHILLIP KEVIN HAYNES,

        Plaintiff,

v.                                    Civil Action No. 5:09CV128
                                                          (STAMP)
BAYER MATERIALSCIENCE, LLC,

        Defendant.


**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
DENYING AS MOOT DEFENDANT'S MOTION TO CONTINUE
PENDING RULING UPON MOTION FOR SUMMARY JUDGMENT**


I.  Procedural History

        On October 22, 2009, the plaintiff in the above-styled civil

action filed a complaint in the Circuit Court of Marshall County,

West Virginia asserting claims for fraudulent concealment and age

discrimination against Bayer MaterialScience, LLC ("Bayer") and

Roseanne J. Keller ("Keller").[1]  Bayer removed this action to this

Court on November 20, 2009.  Defendant Keller filed a motion to

dismiss the plaintiff's complaint as against her for failure to

state a claim under Federal Rule of Civil Procedure 12(b)(6), which

this Court granted on May 27, 2010.  Accordingly, all claims

against defendant Keller were dismissed.  On October 11, 2010,

Bayer filed a motion for summary judgment to which the plaintiff

responded and Bayer replied.  After the defendant's motion for

_____

        [1]The plaintiff's response to the defendant's motion for
summary judgment, filed on October 25, 2010, does not address the
age discrimination claim.  Further, at the pretrial conference held
on December 27, 2010, counsel for the plaintiff withdrew the age
discrimination claim.

summary judgment had been fully briefed, Bayer filed a motion to continue pending a ruling upon the motion for summary judgment, and the plaintiff filed a response.

## II.  Facts

The plaintiff was employed by Bayer from approximately 1979 until October 31, 2007, at which time he accepted a buyout and ended his employment.[2]  Bayer required the plaintiff to undergo an exit physical prior to his employment end date.  The testing was performed on or about October 23, 2007 by the plant nurse, Kim Johnston ("Johnston"), and included a spirometry test, blood test, urinalysis, and electrocardiogram ("EKG").  When Johnston administered the EKG test, she informed the plaintiff that it showed an abnormality.  Nevertheless, the plaintiff alleges that he was never given the opportunity to discuss these irregular test results with the doctor.  The plaintiff alleges that had Bayer not fraudulently concealed the severity of his condition, he would not have accepted the buyout offer, that, among other things, caused a decrease in his healthcare benefits.

Thereafter, the plaintiff moved to North Carolina where he began to experience health problems related to an atrial

---

[2]As a result of a restructuring at Bayer that took place in 2007, Bayer negotiated with the International Chemical Workers Union and agreed to offer a Voluntary Separation Program ("VSP") to bargaining unit members who were age 50 and above as of December 31, 2008.  Participation in the VSP was entirely voluntary and completely at the discretion of the individual employee.  The plaintiff, a bargaining unit employee represented by the Union who worked as a shift electrician, was eligible for participation in the VSP. Def.'s Mot. Summ. J. 2-3.

fibrillation--the heart condition that caused an abnormal EKG reading. The plaintiff contends that he has incurred uncovered medical expenses and has been unable to find long-term work due to his condition. Had he been informed of this condition, the plaintiff argues, he would have declined to participate in the VSP and maintained his employment at Bayer.

## III.  Applicable Law

Under Rule 56(c) of the Federal Rules of Civil Procedure,

> A party asserting that a fact cannot be or is genuinely
> disputed must support the assertion by:
>     (A) citing to particular parts of materials in the
>     record, including depositions, documents,
> electronically stored information, affidavits or
> declarations, stipulations . . . admissions,
> interrogatory answers, or other materials; or
>     (B) showing that the materials cited do not
> establish the absence or presence of a genuine
> dispute, or that an adverse party cannot produce
> admissible evidence to support the fact.

Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718-19 (4th Cir. 1991), cert. denied, 502 U.S. 1095 (1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). However, as the United States Supreme Court noted in Anderson, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegation or denials

of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." <u>Id.</u> at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." <u>Id.</u> at 250; <u>see also</u> <u>Charbonnages de France v. Smith</u>, 597 F.2d 406, 414 (4th Cir. 1979)(Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing <u>Stevens v. Howard D. Johnson Co.</u>, 181 F.2d 390, 394 (4th Cir. 1950))).

In <u>Celotex</u>, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. <u>See</u> <u>Oksanen v. Page Mem'l Hosp.</u>, 912 F.2d 73, 78 (4th Cir. 1990), <u>cert. denied</u>, 502 U.S. 1074 (1992). In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

## IV.  Discussion

The defendant's motion for summary judgment argues that both causes of action alleged by the plaintiff, fraudulent concealment and age discrimination, are legally deficient.[3]  The defendant contends that the fraudulent concealment claim fails because the plaintiff is unable to prove that Bayer intended to conceal anything from him.  The defendant points to the plaintiff's own deposition in order to show that there was no intent by Johnston to withhold any information from Haynes:

> Q.   That was going to be my next question.  Do you know of any reason why nurse Johnston would want to conceal information from you?
> A.   No, I don't.

Def.'s Mot. Summ. J. 8.

Based upon the plaintiff's own words and the lack of any evidence in the record that Bayer intended to conceal the EKG results, the defendant argues that the fraudulent concealment claim is defective and must be dismissed. Further, the defendant argues that because the EKG strip had not been read by the cardiologist at the time of Haynes' medical examination, Johnston had not received the diagnosis of atrial fibrillation at the time she spoke with Haynes, so she had no information to conceal from him.[4]  Finally,

---

[3]Because the plaintiff has withdrawn his age discrimination claim, this Court will not discuss the merits of that claim.

[4]The defendant contends that Haynes declined to meet with Dr. Blum, a private practice physician who provides medical services to the Bayer New Martinsville site as an independent contractor, to review the results of his testing.  Def.'s Mot. Summ. J. 5 n.7.

the defendant emphasizes that since the abnormal EKG appeared after Haynes had elected to voluntarily resign, he could not possibly have relied upon this medical information in making his decision to enter the VSP.

In response, the plaintiff argues that had Haynes been made aware of his atrial fibrillation, he would have requested rescission of his acceptance of the VSP.[5] According to the plaintiff, Johnston received the diagnosis of atrial fibrillation at the time of Haynes' exit physical because the words "atrial fibrillation" are printed at the top of the EKG strip. See Pl.'s Resp. to Def.'s Mot. Summ. J. Ex. 1. The plaintiff contends that although Johnston was aware that Haynes' abnormal heart rhythm was atrial fibrillation rather than simply an abnormal EKG, she failed to inform Haynes of his specific condition. Had Johnston specified that Haynes' heart rhythm was in atrial fibrillation, he would have reconsidered his acceptance of the VSP. Moreover, had the defendant not intentionally failed to ensure that a meeting between Haynes and Dr. Blum took place, Haynes would have been made aware of the details of his condition and taken advantage of the opportunity to rescind the VSP.[6] The plaintiff emphasizes that as to his claim of

_____

[5]The plaintiff notes that Haynes experienced the same condition in 1996 and was aware of the medical significance of this diagnosis.

[6]There is a factual dispute in this case as to whether Haynes actually met with Dr. Blum. Dr. Blum testified that he met with Haynes and performed a complete physical exam on October 29, 2007. Haynes denies that this meeting ever occurred. For purposes of this motion, the Court must view the facts in the light most

fraudulent concealment, the VSP is silent as to its revocability. The plaintiff alleges that other employees similarly situated to Haynes had been permitted to rescind their acceptance of the VSP for family health-related reasons.

In its reply, the defendant states that the revocation right set forth in the VSP's addendum provides that for a period of seven days after execution of the agreement, an employee who is 40 years of age or older as of the time of the initial receipt of the agreement may revoke the agreement. Def.'s Reply 6. Thus, under the terms of the agreement, Haynes had a period of 45 days to consider whether to accept the VSP offer, and if he accepted, he had seven days after execution of the agreement to revoke his decision. Haynes accepted the VSP and did not revoke his decision within seven days. Therefore, the agreement became binding upon him more than four months prior to the time he contends that medical information was concealed from him. Countering the plaintiff's argument that Bayer intentionally failed to ensure that a meeting between Haynes and Dr. Blum took place, the defendant claims that it was Haynes himself who prevented the meeting because he refused to reschedule the consultation.

Fraudulent concealment is a tort recognized in West Virginia jurisprudence involving "concealment of facts by one with knowledge, or the means of knowledge, and a duty to disclose,

---

favorable to Haynes. Thus, this Court assumes that Haynes never met with Dr. Blum to discuss the results of his medical examination.

coupled with an intention to mislead or defraud." <u>Livingston v. K-Mart Corp.</u>, 32 F. Supp. 2d 369, 374 (S.D. W. Va. 1998) (citing <u>Pocahontas Mining Co. Ltd. Partnership v. Oxy USA, Inc.</u>, 503 S.E. 2d 258, 263 (W. Va. 1998)); <u>see also</u> <u>West Virginia Hous. Dev. Fund v. Ocwen Tech.</u>, 200 F.R.D. 564, 567 (S.D. W. Va. 2001) ("A crucial element of fraud, particularly fraudulent concealment, is intent to defraud through false statement."). "Fraudulent concealment requires some affirmative action, 'designed or intended to prevent, and which does prevent, the discovery of facts giving rise to the fraud claim.'" <u>Livingston</u>, 32 F. Supp. 2d at 374 (quoting <u>Kessel v. Leavitt</u>, 511 S.E.2d 720, 763 (W. Va. 1998)).

The record in this case, including the plaintiff's own words, reveals that he has failed to prove the requisite intent for a fraudulent concealment claim. There is no evidence that Bayer intended to conceal the results of the EKG from Haynes or intended to mislead him in any way. In fact, Haynes himself admits that Johnston did not purposefully conceal a more specific interpretation of the EKG. Def.'s Mot. Summ. J. Ex. A at 34. Without first receiving a reading of the EKG results from a cardiology associate, Johnston could not provide Haynes with an exact diagnosis. The plaintiff has not set forth any evidence to show that Johnston, or any other Bayer employee, intentionally misled or defrauded Haynes. Rather, Johnston informed Haynes of his abnormal EKG at the time of his exit physical. Yet even with

this knowledge and his prior experience with atrial fibrillation, Haynes declined to follow-up with Dr. Blum:

> Q. After [Johnston] indicated to you that Dr. Blum was not available, did she try and reschedule you for another time?
> A. She said that she could. She said that I could reschedule you back in a later date, of course, to see him, and I said no. I said I don't think it's necessary that I see him.
> Q. So it was up to you?
> A. Yeah . . . .

Def.'s Mot. Summ. J. Ex. A at 39.

The record is also void of any evidence that Johnston or Dr. Blum had any involvement with the administration of the VSP. Moreover, the Bayer human resources personnel involved with the VSP had no knowledge of Haynes' medical information, nor did they conceal anything from Haynes. Def.'s Mot. Summ. J. Ex. B at 49. Even if Haynes had been made aware of his atrial fibrillation at the time of his exit examination, this was four months after Haynes' right to rescind had expired. The plaintiff has also failed to show any affirmative action on the part of Bayer to mislead, misrepresent, or misinform Haynes. Instead, the record reveals that Haynes voluntarily accepted the VSP benefits, resigned his employment, was informed of an abnormal EKG, never reviewed the results of the EKG, and relocated to North Carolina after leaving the company.

Mere allegations are insufficient in response to a motion for summary judgment to show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). Accordingly, the Court finds that the

plaintiff has failed to establish the elements of fraudulent concealment and grants the defendant's motion for summary judgment.

## V. <u>Conclusion</u>

For the reasons stated above, this Court finds that the defendant's motion for summary judgment must be GRANTED. Accordingly, it is ORDERED that this case be DISMISSED and STRICKEN from the active docket of this Court. Further, the motion to continue pending a ruling upon the motion for summary judgment is hereby DENIED as MOOT.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED:      December 30, 2010


                                        /s/ Frederick P. Stamp, Jr.
                                        FREDERICK P. STAMP, JR.
                                        UNITED STATES DISTRICT JUDGE